OSCAR UNNA *vs.* C. BROWN *et al.,* Executors.

J. H. HENDERSON *et al. vs.* W. F. ALLEN, Receiver, *et al.*

IN EQUITY. BEFORE JUDD, C.J.

OCTOBER, 1887.

A receiver, appointed to carry on a sugar plantation upon which there were outstanding mortgages, held to have a prior lien upon receipts of the plantation, but not upon the *corpus* of the property as against the mortgagees.

DECISION OF JUDD, C.J.

The first matter is a motion by M. S. Grinbaum & Co., setting forth that on the appointment of W. F. Allen, Esq., as Receiver of the Hana Plantation, on the 5th of August, 1885, they made an agreement to make advances to him for the purpose of keeping up said plantation while in his hands as receiver, in accordance with the authority given him by the Court to make contracts for obtaining money for said purpose; that in pursuance of said contract and of orders made by the Court from time to time, they have advanced to said receiver from the 5th day of August, 1885, to the 13th day of April, 1887, the sum of $169,826.95, including interest, and have received from proceeds of crops the sum of $141,728.78, leaving a balance of $28,098.17 due the petitioners on the 13th April, 1887; that

these advances were made to the receiver solely upon the faith and credit of the orders of the Court, and in confidence that the Court would see to the payment of the same.; that the advances have been made for the payment of the allowances made by this Court to the receiver and to the widow and child of August Unna deceased, to the payment of interest upon mortgage debts, for the general purposes of the plantation and taxes, and all for the preservation of said property.

That since April 13th, 1887, the petitioners have made certain advances to the receiver in pursuance of an order made in the case of *Henderson et al. vs. Allen et al.;* that said partnership of August and O. Unna is also indebted to petitioners in the further sum of $73,924.93, for advances made to them prior to the appointment of the receiver; that the petitioners had declined to make further advances to them, having no security.

They pray that in addition to the sum to be allowed them for advances since April 13, 1887, on the order made in the suit of *Henderson et al. vs. Allen et al.*, they may be allowed the said sum of $28,098.17, and that the same may be paid from the funds (the proceeds of the sale of the plantation) before the payment of any mortgage liens, and also that the receiver may be directed to sell all of the individual property of said partners and apply the same, after paying individual debts, to claims against said partnership.

The following is a statement of the essential facts of this case:

Mr. August Unna, the principal owner of the Hana Plantation, died in April, 1885, leaving a will appointing Cecil Brown, Dr. R. McKibbin and Maria B. Unna (deceased's widow), executors and executrix, which will was admitted to probate. There were three mortgages then existing upon the plantation, the first for $25,000, held by the Hawaiian Investment and Agency Company, the second for $25,000, held by J. H. Henderson and others, and the third for $25,000, held by Elizabeth Anthon and others.

In July, 1885, Oscar Unna, the surviving partner of A. Unna deceased, and part owner of the Hana Plantation, filed a bill in

equity to wind up the partnership and for the appointment of a receiver. It set forth the death of A. Unna, that he left a widow and a child named Elsie, the making and probate of the will; that there were mortgages upon the property amounting to $75,000; that $70,000 and over was then owing to M. S. Grinbaum & Co.; factors and agents of the plantation; that there are no moneys of the deceased or of the partnership wherewith to pay said debts or the interest on the mortgages; and that a sale of the plantation could not then be made without great sacrifice of value.

That the executors and executrix are not authorized by the will to raise moneys by mortgage upon the property of the testator or upon the property or otherwise for the carrying on of the plantation, and the petitioner is unable to raise money therefor. The bill prayed for an account to be taken of all moneys owing by said partnership; that the assets of the firm and of the separate property of the deceased be marshaled, and that a receiver and manager be appointed to take charge of and carry on the plantation business until the same can properly be wound up, and the said debts paid out of the profits of said business or from the proceeds to arise from sale of said property when the same can be made without sacrifice, with power in such receiver to pay all rents, taxes, expenses in respect to the property and in carrying on the said business, and for that purpose to pay both employees and agents as may be required, and to sell the sugars and collect all moneys due or to be due to the partnership business, to pay the interest on the mortgages and all other debts now owing or which shall be incurred in respect of said business and plantation, and also to raise money to pay to defendants for the use of said widow and child until the final winding up of said business, etc.

The executors, Brown and McKibbin, and Mrs. Unna, executrix, were made parties defendant, and they answered, in the main admitting the allegations and consenting to the appointment of a receiver.

The mortgagees were not made parties to the bill, nor

did they appear at any stage of these proceedings. The attorney for the petitioner, Oscar Unna, also appeared for Messrs. Grinbaum & Co., unsecured creditors. It was stated to the Court that a forced sale of the plantation would be damaging to the interests of the parties interested, and that the property of the plantation was amply sufficient for the payment of the mortgages. Whereupon the Court appointed W. F. Allen receiver, under a bond of $10,000, with a salary of $75 per month, to report quarterly; and among other things, the order authorized the receiver to make such contracts as he may deem proper for obtaining money to be advanced for carrying on said plantation, including the usual and necessary outlays thereon for labor, salaries, rents, taxes and otherwise, and for the sale of the sugars to be made thereon, but no unusual outlays for improvements or otherwise upon said property, exceeding in any one item the sum of $500, shall be made without the express approval of this Court, etc.

The receiver made an arrangement with Messrs. Grinbaum & Co., the former agents, to continue their agency of the plantation and make advances at 4½ per cent. commission and 9 per cent. interest.

Contrary to expectation the plantation has run behind, owing to the low price of sugar and certain defects in the plant.

On the 12th April, 1887, the holders of the second mortgage, Henderson and others, filed a bill to foreclose their mortgage, and an order was made on the 13th April, directing summons to be served upon parties, returnable on the 29th July, and further that "all advances and sums of money which may be made to Mr. W. F. Allen, the receiver of this Court, now in charge of the premises described in the said bill, and all sums which may be expended by him in keeping up said plantation and preserving the crops of the same, and in planting such new crops as good husbandry may require, until a sale of said property is had under the order of this Court, shall constitute a first lien upon said premises, and shall be paid out of the first moneys realized upon any sale of said premises."

The proceedings in foreclosure went along in the usual way, and the plantation was sold on the 5th September for the sum of $103,000, Messrs. Grinbaum & Co. being the purchasers. This amount not being much more than sufficient to discharge the principal and interest of the three mortgages, as well as the receiver's expenses since the order on the bill for foreclosure, 13th April, 1887, the important and difficult question arises on the motion of Grinbaum & Co., whether the balance of account for running the plantation from the appointment of the receiver, August 5th, 1885, to the order in foreclosure, should be given priority over the mortgages as a first lien.

The mortgagees do not object to the balance of the receiver's account since April 13, 1887, being paid in full before the mortgages are discharged, and this account may be referred to a master.

The first and third mortgagees strenuously oppose the allowance of the receiver's account from the 5th August, 1885, to 13th April, 1887, as a preferred claim. The second mortgagees, Henderson *et al.*, are protected by endorsement, and say nothing.

It is urged on behalf of these mortgagees, that not having been made parties to the original bill, which prayed for the appointment of a receiver, the Court is now without jurisdiction to create a lien which shall have priority over their liens.

The general jurisdiction of the Court to appoint a receiver of partnership property upon the death of a partner, on a proper showing of the necessity for it, is not questioned. Nor is it questioned by the mortgagees that the peculiar circumstances of this case, of a sugar plantation owned by a partnership, on one partner dying, the surviving partner and the executors not having funds, and not being willing to assume the responsibility of carrying it on, would justify the appointment of a receiver in the interests of the devisees and of the unsecured creditors.

A sugar estate, when once it has stopped operations, has but little value over the value of the separate items of property composing it. Its value consists in what it can produce, and if it is

suffered to lie idle, and crops are not kept in cultivation, and preparation for successive crops neglected, it depreciates most rapidly.

The necessity of keeping the work of a sugar plantation moving is as essential to its preservation as productive property as a railroad, with this difference only: that the public right to have a railroad kept up for its convenience does not exist in the case of a plantation.

In August, 1885, the only alternative was an immediate sale by the executors, with the consent of the mortgagees, or the appointment of a receiver, to run it until it could be wound up and its debts paid from the profits, or eventually sold to advantage.

What was the object, then, of the receivership in this case? None of the mortgagees had taken possession. Their mortgages were not due, and they were content with their security. I can come to no other conclusion than this: that the object of the receivership was to enable the unsecured creditors and the heirs to have the plantation worked so as to pay the creditors and save something for the heirs.

The mortgagees did not fear that the security would prove insufficient, or that the mortgagors were insolvent, which are the grounds upon which a receiver may be appointed in aid of a mortgagee; they took no steps to have a receiver appointed, relying entirely upon their security. I do not think it is an answer to say that as they were benefited by the plantation being continued in operation for two years, they should admit the lien for the expenses for running the same to a priority over their own liens.

If the plantation had been stopped for want of funds, they undoubtedly would have either taken possession or have applied for a receiver. But if they were sure of their money in 1885, they are in no better position in 1887. I think the extent of the lien which the receiver's disbursements had was over the receipts alone, and not over the *corpus* of the estate.

The advantage of this receivership to the unsecured creditors (M. S. Grinbaum & Co.) is manifest. It afforded an opportunity

to ascertain by actual trial whether the plantation could be worked out of debt, and they made the advances, since they were to take all the profits of what their expenditures, through the receiver, produced. Of this the mortgagees did not and could not well complain, as their interest was paid.

Upon a review of the whole case, I think that it was not contemplated that any excess of expenditure over receipts was to be recoverable out of the *corpus* of the estate over the mortgages. Certainly the order appointing the receiver did not so read, and there was nothing on the record to apprise the mortgagees that their liens were liable to be defeated by the contingency of the plantation under the receiver running behindhand.

Why, then, were the expenditures to be made by the receiver subjected to the scrutiny and allowance by the Court? He was not allowed to make any unusual outlay over $500 in amount without the express sanction of the Court. It was, in my opinion, in order to protect the interests of the devisees of A. Unna, deceased, and to prevent unnecessary and excessive outlays which would postpone their getting anything until these were paid. I am fully impressed with the weight of the reasons which are urged against the view I have taken, to wit: that the petitioners, M. S. Grinbaum & Co., were justified in giving full faith and credit to the receiver and to the order of the Court appointing him; that the authority to borrow money for advances implies the understanding to see it paid, etc.

I think it can be drawn from all the cases cited that those who take receiver's certificates, or, as in this case, advance money to the receiver, do so subject to the rights of the parties who have prior liens upon the property, and who have not, but should have, been brought into Court if their rights were to be affected. There may be exceptional cases when a Court will deem it necessary to charge the property over the prior liens, with a receiver's lien in advance of the parties who hold these prior liens being brought into Court, and the Court will then have to consider whether it is equitable to make such a superior charge upon the property. But I do not find that the case before me is of such a nature.

Declining to hold that the advances to the receiver, from 5th August, 1885, to 13th April, 1887, are a first charge upon the property, no reference of this account is necessary.

As above stated, the account from the 13th April, 1887, to day of sale of the plantation, may be referred to a master to be agreed upon by the parties; or, if they cannot agree upon one, I will appoint one, and I will make such directions to him as they may be applied for from time to time.

The authorities cited by petitioners are: *Wabash W. L. and P. R. R. vs. Central Trust Co.*, 22 Fed. Rep., 271; High on Receivers, Sec. 394, B. and C., 472; *Blair vs. St. Louis R. R.*, 22 Fed. Rep., 472; *Central Trust Co. vs. Wabash R. R.*, 22 Fed. Rep., 868; Kerr on Receivers; *Building Association vs. Sup. Ch.*, 60 Cal., 223; *Gibson vs. Martin*, 8 Paige, 481; *Miltenberger vs. R. R.*, 106 U. S., 286; *Hervey vs. Ill. Midland R. R.*, 28 Fed. Rep., 176; *Fosdick vs. Schall*, 99 U. S., 235.

For the mortgagees: High on Receivers, Secs. 17, 84, 290, 111, 112, 682, 683, 685, 688, 495; 32 Ill., 79; 41 Conn.; 28 Fed. R., 176; Kerr's Inj., 50, 51, 52, 54, 55, 56, 58 and 73.

In the case of *Henderson vs. Allen*, I order the distribution of the fund as follows: First, to the payment of the receiver's account from 13th April, 1887, to day of sale, and then the mortgages with interest, according to their priority. As the fund is sufficient to pay all, I see no reason why the mortgages may not be paid in full, without waiting for the master's report. The receiver is directed to realize upon the individual estate of of the partners, and to wind up the partnership in accordance with the law.

Decree accordingly.

*F. M. Hatch* and *S. B. Dole*, for petitioners, M. S. Grinbaum & Co.

*W. O. Smith* and *W. A. Kinney*, for first and third mortgagees.

*Cecil Brown*, for executors of the will of August Unna, deceased.

*W. Foster* (guardian *ad litem*), for Elsie Unna.

Honolulu, October 15, 1887.